UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THYSSENKRUPP ELEVATOR CORPORATION, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | Case No. 4:18-cv-02100 SRC |
| vs. | ) | |
| | ) | |
| THE HARLAN COMPANY, | ) | |
| | ) | |
| Defendant(s). | ) | |

**<u>Memorandum and Order</u>**

In early 2017, the Harlan Company won a bid for a modernization project on multiple MetroLink light rail stations in the St. Louis area.  Harlan entered into an approximately $1 million subcontract with Thyssenkrupp Elevator Corporation for elevator services at six of these stations.  A year later, after a delayed start and numerous changes to the project schedule, Harlan terminated the subcontract with Thyssenkrupp and demanded damages.  Harlan also sought payment from Federal Insurance Company, which had issued payment and performance bonds on Thyssenkrupp's behalf.  Thyssenkrupp sued Harlan for breach of contract, seeking payment under the subcontract for Thyssenkrupp's work on the Metro project.  Harlan counterclaimed, alleging that Thyssenkrupp and Federal breached their obligations under the subcontract and the performance bond.  The Court now considers the parties' respective summary judgment motions. Docs. 73, 76, 78.

## I.  Background

Harlan, the general contractor for the Metro project, hired Thyssenkrupp for its services at six Metro stations.  Doc. 92 at ¶ 1.  Harlan executed the subcontract with Thyssenkrupp to furnish and install elevator equipment.  *Id.* at ¶ 2.  Due to significant project delays, Harlan

terminated the subcontract before Thyssenkrupp completed the work, demanding damages. Doc. 87 at ¶ 23. Harlan also made a claim on the payment and performance bonds from Federal. Doc. 91 at ¶ 3.

Thyssenkrupp filed suit against Harlan, claiming that Harlan breached the subcontract by failing to schedule and direct Thyssenkrupp's sub-subcontractors and by wrongfully terminating the subcontract. Doc. 1 at 4–5. Thyssenkrupp seeks compensatory damages, lost profits, and attorneys' fees and costs, as well as a declaratory judgment stating that Harlan expressly waived the consequential damages it seeks. *Id.* at 7. Thyssenkrupp also asserts a claim in quantum meruit, for the reasonable value of the services it performed for Harlan. *Id.* at 8.

Harlan's counterclaim alleges that Thyssenkrupp failed to timely submit project submittals and failed to complete its work on schedule. *Id.* at 6–9. Harlan further alleges that Thyssenkrupp failed to obtain a performance bond as required under the subcontract. *Id.* at 7. Harlan also named Federal as a third-party defendant and included a demand for surety against it. *Id.* at 9. Harlan contends that Federal is required to make a payment to Harlan under the terms of the bond, and Harlan seeks a declaratory judgment that its damages are actual damages permitted under the subcontract. *Id.* at 10.

Harlan moves for summary judgment on Thyssenkrupp's claims and partial summary judgment on its own counterclaims against Thyssenkrupp and Federal. Doc. 76. *Id.* Thyssenkrupp and Federal move for summary judgment on Harlan's counterclaims. Docs. 73, 78.

## II.     Facts

### A.     Undisputed facts

Except as otherwise noted, the Court finds the following facts not genuinely in dispute in this case.  *See* Fed. R. Civ. P. 56(g).

#### 1.     The subcontract

In April 2017, Harlan notified Thyssenkrupp that Harlan would award the Metro project subcontract to Thyssenkrupp.  Doc. 92 at ¶ 2.  Harlan and Thyssenkrupp entered into subcontract SC-2017-16-001, though they disagree on when they actually entered into the subcontract.  *Id.*; Doc. 91 at ¶ 1.  The total price of the subcontract was $1,100,246.  Doc. 92 at ¶ 6.  On July 20, 2017, Harlan and Thyssenkrupp executed an amendment to the subcontract, which states that "[i]n the event of a conflict with other articles, terms, conditions or contract documents, this Amendment No. 1 shall be final."  *Id.* at ¶¶ 4–5.  Doc. 92-2 at  67–68.

The subcontract called for Thyssenkrupp to furnish and install elevator equipment at six Metro stations, namely:  (1) Laclede's Landing; (2) Convention Center East; (3) Convention Center West; (4) 8th & Pine East; (5) 8th & Pine West; and (6) Union Station.  Doc. 87 at ¶ 4. Section 9 of the subcontract provides:  "Time is of the essence in the performance of all of Subcontractor's Work and other obligations under the Subcontract Documents."  *Id.* at ¶ 9.  The subcontract also contains a "preliminary schedule for the project which is subject to change based on lead times from suppliers for the special 316 SS called for on this project," but the parties dispute whether this part of the subcontract established a definitive project schedule for the parties.  *Id.* at ¶ 5.

The subcontract contains provisions for termination of the subcontract if Harlan determined that Thyssenkrupp failed to comply with its obligations.  *Id.* at ¶ 24.  Section 19(a), governing termination, provides:

> If Subcontractor fails to comply, or if Contractor reasonably determines Subcontractor will be unable to comply, with any of Subcontractor's obligations under the Subcontract Documents, including Subcontractor's
>
> > (i) **failure at any time to furnish sufficient labor, supervision, materials, or services (including insurance and bonds)** complying with the Subcontract Documents, or sufficient or properly operating tools, equipment, or other items necessary for the performance of Subcontractor's Work;
> >
> > (ii) **failure in any respect to prosecute Subcontractor's Work with promptness and diligence**, including as a result of labor picketing, strikes, or disputes caused by or directed at Subcontractor or any of Subcontractor's subsubcontractors or suppliers;
> >
> > (iii) **stoppage of, delay in, interference with, or damage to the work of Contractor or any others on the project**, including as a result of labor picketing, strikes, or disputes caused by or directed at Subcontractor or any of Subcontractor's sub-subcontractors or suppliers;
> > . . .
>
> **If Subcontract fails to cure such default** to Contractor's and Owner's satisfaction within 72 hours of Subcontractor's receipt of written notice to correct from Contractor (or within such shorter time, if any, as the Owner Contract provides or is reasonable in an emergency), Contractor may, in addition to any other right or remedy of Contractor, furnish any necessary labor, supervision, materials, tools, equipment, services, or other items, through Contractor or others, to correct the default, at Subcontractor's expense, and/or **Contractor may terminate this Subcontract** and complete the performance of Subcontractor's Work, at Subcontractor's expense.

*Id.* at ¶ 24 (emphasis added).  Section 6 of the subcontract requires Thyssenkrupp to deliver a payment and performance bond for the full amount of the subcontract to Harlan within three days of Harlan's demand for the bond.  *Id.* at ¶ 10.

Regarding damages, section 19(c) of the subcontract provides that Thyssenkrupp will be liable to Harlan for "all costs and expenses Contractor incurs as a result of any default by Subcontractor" as well as "all charges, liabilities, fines, penalties, losses, damages, and claims

4

sustained by or assessed against Contractor as a result of any delay resulting from Subcontractor's default." *Id.* at ¶ 20. Meanwhile, Amendment 1 states: "In no event shall Subcontractor be responsible for consequential, indirect, incidental, exemplary, special or liquidated damages." *Id.* at ¶ 19.

### 2.    The Metro project

Harlan issued Thyssenkrupp a notice to proceed for the project on May 16, 2017. *Id.* at ¶ 7. Harlan expected Thyssenkrupp to begin construction on the first elevator in October 2017, though Thyssenkrupp claims that the parties never agreed to that schedule. *Id.* at ¶ 13. In November 2017, Harlan sent Thyssenkrupp a written notice to cure default, as well as a request for Thyssenkrupp to provide a payment and performance bond under section 6 of the subcontract. Doc. 92 at ¶ 8; Doc. 87 at ¶ 11. In December 2017, Harlan sent Thyssenkrupp a second notice to cure default, and the parties agreed to Change Order No. 1, incorporating a revised project schedule. Doc. 92 at ¶¶ 9–10.

On February 8, 2018, Harlan sent Thyssenkrupp its first notice of default. *Id.* at ¶ 11. On February 9, 2018, Thyssenkrupp entered into a performance bond and a payment bond with Federal, and Federal issued the bond to Harlan. Doc. 92 at ¶¶ 12–13; Doc. 87 at ¶ 12. On February 12, Harlan and Thyssenkrupp entered into Change Order No. 2 regarding the fee for the bond. Doc. 74-8. Thyssenkrupp began construction on the first elevator on February 20, 2018. Doc. 87 at ¶ 14.

In April 2018, Harlan sent Thyssenkrupp its second notice of default for failing to supply an adequate workforce to complete the project, among other things. Doc. 92 at ¶ 14. And in May 2018, Harlan sent a third notice of default. *Id.* at ¶ 15.

On July 11, 2018, Harlan and Thyssenkrupp held a meeting and resolved that Thyssenkrupp would perform the remainder of its obligations under the subcontract. *Id.* at ¶ 16. Soon after, on July 20, 2018, Harlan issued a fourth notice of default, which included a demand for $65,625 in damages due to delays. *Id.* at ¶ 17. Thyssenkrupp rejected Harlan's demand for damages, asserting that Harlan waived these damages through Amendment No. 1. Doc. 87 at ¶ 18. Harlan then demanded damages from Federal under the performance bond. Doc. 92 at ¶ 21. Federal denied any obligation under the bond. *Id.* at ¶ 22; Doc. 91 at ¶ 22. On August 30, 2018, Harlan terminated the subcontract with Thyssenkrupp. Doc. 92 at ¶ 20. In September 2018, Harlan issued a notice of performance-bond default, and Federal again denied Harlan's claim on the bond. *Id.* at ¶¶ 25–26.

In early 2019, Harlan decided to complete the Metro project without Thyssenkrupp or Federal and entered into an agreement with Allrise Elevator Company to complete the remaining work. Doc. 92 at ¶¶ 23–24.

### B.    Disputed facts

Although the parties agree on the existence of a valid subcontract between Harlan and Thyssenkrupp, the parties dispute when Harlan and Thyssenkrupp first entered into the subcontract. Thyssenkrupp asserts that they entered into the subcontract as early as April 11, 2017. *Id.* at ¶ 2. Harlan states that they entered into the subcontract on July 20, 2017, the same day that they entered into Amendment No. 1. *Id.* at ¶ 2. Harlan and Thyssenkrupp also dispute whether the subcontract established a schedule for Thyssenkrupp's work. Harlan claims that the subcontract required project submittals within four to six weeks of the notice to proceed on May 16, 2017. Doc. 87 at ¶¶ 5–8. Thyssenkrupp counters that the schedule in the subcontract was just a "preliminary schedule," and that the parties did not set any firm project deadlines until

6

Change Order No. 1 in December 2017.  *Id.* at ¶¶ 5–6, 13.

Importantly, Harlan and Thyssenkrupp dispute who was actually responsible for the delays to the Metro project.  Harlan claims that Thyssenkrupp failed to provide the project submittals or begin construction on the first elevator according to schedule.  *Id.* at ¶¶ 6–8, 13–14. Thyssenkrupp denies responsibility for the delays, arguing that Harlan made changes to the work resulting in project delays.  *Id.* at ¶¶ 5–6, 13.

The parties also dispute whether Thyssenkrupp defaulted on the subcontract by failing to timely provide bond.  Although Harlan requested that Thyssenkrupp provide payment and performance bonds in November 2017, Thyssenkrupp responds that the parties executed a change order in February 2018 and that the failure to procure the bond was not a material breach. Doc. 92 at ¶¶ 9, 13; Doc. 86 at 9.

Meanwhile, Harlan and Federal dispute whether Federal defaulted on its performance of the bond by denying Harlan's claims for damages.  Harlan claims that Federal defaulted because Federal refused to pay Harlan's damages or complete performance on the subcontract in August 2018.  Doc. 77 at 30–32.  Federal contends that it had no obligation to Harlan because Thyssenkrupp did not default on the subcontract, among other things.  Doc. 91 at ¶¶ 21–22.

## III.    Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).  The

moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  Self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Armour and Co. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.    Discussion

### A.    Harlan's motion for summary judgment

Harlan claims that it is entitled to summary judgment in its favor because the uncontroverted facts establish that Thyssenkrupp and Federal breached their obligations under the subcontract and payment bond.  Doc. 76.  Harlan seeks summary judgment on the following: (1) Count I of its counterclaim for liability against Thyssenkrupp, (2) Count II of its counterclaim for liability against Federal, (3) Count III of its counterclaim and Count III of Thyssenkrupp's complaint for declaratory judgment in Harlan's favor, (4) Counts I and II of Thyssenkrupp's complaint, and (5) Count IV of Thyssenkrupp's complaint.  Id. at ¶¶ 2–7.  The Court addresses each argument in turn.

### 1.      Count I of Harlan's counterclaim

Count I of Harlan's counterclaim alleges that Thyssenkrupp breached the subcontract by failing to timely submit project submittals and complete the project on schedule, as well as failing to obtain the performance bond when Harlan requested it.  Doc. 44 at 6–9.  The elements of a breach-of-contract action are:  "(1) a contract, (2) the parties had rights and obligations under the contract, (3) breach, and (4) damages."  *Roe v. St. Louis Univ.*, 746 F.3d 874, 885–886 (8th Cir. 2014).  Here, the parties dispute only breach and damages.

Harlan claims that Thyssenkrupp materially breached the subcontract by failing to comply with the project schedule.  Doc. 77 at 27.  The subcontract states that [t]ime is of the essence" and that July 31, 2018 was the estimated completion date for the project.  Doc. 77-6 at 1.  But Thyssenkrupp did not complete the project by July 31, 2018.  Doc. 77 at 27.  Harlan asserts that Thyssenkrupp should have started construction on the first two elevators by October 25, 2017, but Thyssenkrupp did not begin until February 20, 2018.  *Id.* at 28.  The subcontract incorporated a preliminary schedule from Thyssenkrupp's revised proposal, setting out that project submittals would only require 4–6 weeks, but Thyssenkrupp did not provide the submittals in this time.  *Id.* at 1, 18.

Thyssenkrupp claims that Harlan itself was responsible for many of the delays.  Doc. 86 at 7–9.  Thyssenkrupp argues that Harlan did not set forth sufficient facts to show that the delays were Thyssenkrupp's fault, so Harlan is not entitled to summary judgment on Count I.  *Id.* at 2.  Thyssenkrupp points to the deposition testimony of its employee, James Guise, which calls into question whether Thyssenkrupp caused the delays to the project and demonstrates that Harlan and other parties were partly responsible for the delays to the project.  *Id.* at 2, 7–9.  Additionally, Thyssenkrupp disputes that the project submittals were late.  Under Amendment

No. 1, the parties agreed that the "[s]chedule shall be agreed to in writing by both parties before becoming effective." Doc. 92-2 at 67. Thyssenkrupp explains that the parties never agreed in the subcontract to anything but a preliminary schedule for submittals. *Id.* at 8; Doc. 87 at ¶ 8.

Thyssenkrupp creates a genuine issue of fact on whether it breached the subcontract by failing to meet the project schedule. After drawing all reasonable inferences in favor of Defendants, the Court finds that factual disputes exist over whether Thyssenkrupp caused the delays to the project and failed to provide the submittals on schedule. A reasonable jury could find that Thyssenkrupp did not breach the subcontract. Doc. 86 at 2, 7–9. Harlan presented minimal evidence at summary judgment showing that Thyssenkrupp failed to perform under the subcontract, and Thyssenkrupp's evidence raises factual disputes that the Court cannot resolve at summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Because Thyssenkrupp presents factual disputes on whether it breached the subcontract, the Court denies Harlan's motion for summary judgment on this ground. Doc. 76.

Harlan also claims that Thyssenkrupp breached the subcontract by failing to obtain the payment and performance bond within three days of Harlan's demand. Doc. 77 at 28. Section 6 of the subcontract provides that Thyssenkrupp had to provide the bond within three days of Harlan's demand. Doc. 92-2 at 7. Though Harlan made the demand on November 15, 2017, Thyssenkrupp did not provide the bond until February 9, 2018. Doc. 92 at ¶¶ 8–10.

Thyssenkrupp responds that the parties resolved the bond issue through Change Order No. 2 on February 12, 2018. Doc. 86 at 9. The change order increased the subcontract price to compensate Thyssenkrupp for the cost of the bond. Doc. 74-10; Doc. 92-2 at 7. Thyssenkrupp contends that Harlan thereby waived any claim in relation to Thyssenkrupp's timing in procuring

the bond.  Doc. 86 at 9.  Thyssenkrupp points to Section 16(d) of the subcontract, which

provides:

> A change order signed by Contractor and Subcontractor constitutes a *complete and
> final settlement of all issues related to or resulting from the change included
> therein*. Neither Contractor nor Subcontractor thereafter shall assert any claim that
> such change, either singly or in the aggregate with other changes, caused such party
> to incur additional impact, lost productivity, overhead, or other costs of any type,
> and all such costs are waived upon the execution of the first change order related
> thereto.

Doc. 92-2 at 11 (emphasis added).

Thyssenkrupp breached the express terms of the subcontract by waiting to procure the

payment and performance bond.  *See* Doc. 92-2 at 7.  But Thyssenkrupp cured this default by

obtaining the bond only a day after Harlan sent the notice of default.  Doc. 92 at ¶¶ 8–11; Doc.

92-2 at 12 (Harlan could terminate the subcontract if Thyssenkrupp failed to cure a default

"within 72 hours of [Thyssenkrupp's] receipt of written notice to correct").  By executing

Change Order No. 2, Harlan excused Thyssenkrupp's delay.  *See* Doc. 92-2 at 11.  Change

orders are a "complete and final settlement of all issues related to or resulting from the change."

*Id.*  In the change order, Harlan agreed to pay the cost of the bond premiums it had just received,

resolving the issue of Thyssenkrupp's late provision of the bond.  *See* Doc. 74-10.

Additionally, Harlan failed to present evidence that Thyssenkrupp's untimely provision

of the bond was a material breach of the subcontract that entitled Harlan to terminate the

subcontract, particularly because Harlan does not claim it suffered any damages from the delay

in receiving the bond.  *See* Doc. 77 at 28.  "If one party to a contract materially breaches that

contract, the aggrieved party may cancel the contract and be relieved of its obligation under the

contract."  *Greenstreet v. Fairchild*, 313 S.W.3d 163, 169 (Mo. Ct. App. 2010).  "A material

breach for the purpose of justifying rescission is one where the breach relates to a vital provision

of the agreement, i.e. one that goes to the very substance or root of the agreement and cannot relate simply to a subordinate or incidental matter." *Patel v. Pate*, 128 S.W.3d 873, 878 (Mo. Ct. App. 2004). "Whether a breach of contract is material is a question of fact." *Greenstreet*, 313 S.W.3d at 169 (internal quotations omitted).

Thyssenkrupp cured the default under the express terms of the subcontract by providing bond within 72 hours of its receipt of a notice of default. Doc. 92-2 at 12. Harlan presents no evidence of any damages caused by Thyssenkrupp's untimely provision of the bond or that the three-day time limit for receiving the payment and performance bond was a "vital provision" of the subcontract. Doc. 77 at 28; *see also Patel*, 128 S.W.3d at 878. As the materiality of a breach of contract is a factual issue, the Court declines to resolve this issue on summary judgment. *See Greenstreet*, 313 S.W.3d at 169. Accordingly, the Court denies Harlan's Motion for Summary Judgment on Count I of its counterclaim, Doc. 76.

### 2.    Count II of Harlan's counterclaim

Harlan moves for summary judgment as to liability on Count II of its counterclaim. *Id.* at ¶ 2. Count II alleges that Federal breached the performance bond by failing to make payments to Harlan after Harlan made a claim on the bond. Doc. 44 at 9. Federal urges that factual issues remain as to whether Thyssenkrupp breached the subcontract, among other things. Doc. 94.

Genuine issues of material fact exist as to whether Thyssenkrupp materially breached the subcontract, so the Court cannot determine whether Thyssenkrupp was in "contractor default" under the performance bond. Doc. 81-1 (defining "contractor default" as "[f]ailure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a *material* term of the Construction Contract." (emphasis added)). Harlan could only make a claim

on the bond if Thyssenkrupp was in "contractor default," therefore the Court denies Harlan's Motion for Summary Judgment on Count II of its counterclaim, Doc. 76.

### 3.      Count III of Harlan's counterclaim

Harlan moves for summary judgment in its favor on Count III of its counterclaim, as well as summary judgment on Count III of Thyssenkrupp's complaint, seeking a declaratory judgment that the subcontract permits Harlan's damages for delay because they are direct, rather than consequential.  Doc. 76 at ¶¶ 3, 6.  But entering declaratory judgment on damages issues "which depend upon the resolution of controverted matters would be tantamount to advisory opinions." *Marshall Contractors, Inc. v. Peerless Ins. Co.*, 827 F. Supp. 91, 93 (D.R.I. 1993); *see also Flast v. Cohen*, 392 U.S. 83, 88 (1968) ("The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions."). Thyssenkrupp's breach of the subcontract is a threshold issue that the factfinder must resolve before the Court can address whether Amendment No. 1 precludes Harlan's damages for delay. *See Robson v. Duckpond Ltd.*, No. 4:19-CV-01862-SRC, 2021 WL 1222429, at *8 (E.D. Mo. Mar. 31, 2021) (declining to address damages issues at summary judgment due to unresolved factual issues pertaining to liability); *Borup v. CJS Sols. Grp., LLC*, No. CV 18-1647 (PAM/DTS), 2019 WL 4820732, at *1 (D. Minn. 2019) (same).  The Court therefore denies Harlan's motion for summary judgment on Count III of Harlan's counterclaim and Count III of Thyssenkrupp's complaint, Doc. 76 at ¶¶ 3, 6.

### 4.      Counts I and II of Thyssenkrupp's complaint

Harlan moves for summary judgment in its favor on Counts I and II of Thyssenkrupp's complaint, arguing that Thyssenkrupp's alleged damages are excluded under the subcontract and that Harlan did not breach any of the terms of the subcontract. *Id.* at ¶¶ 4–5.  Count I of

Thyssenkrupp's complaint alleges that Harlan breached the subcontract by 1) signing Change Order No. 3, 2) terminating the subcontract without cause, and 3) demanding administrative costs from Thyssenkrupp due to the alleged project delays.  Doc. 1 at 4–5.  Count II of Thyssenkrupp's complaint alleges that Harlan breached the subcontract by "failing to schedule, direct, and coordinate the work of TKE's sub-subcontractors."  *Id.* at 5–7.

Harlan sets out four arguments for summary judgment on these counts.  First, Harlan argues that Thyssenkrupp's claims in Counts I and II for breach of contract are precluded by Thyssenkrupp's prior material breaches.  Doc. 77 at 26 (citing *KC Excavating and Grading, Inc. v. Crane Construction Company*, 141 S.W.3d 401, 405 (Mo. Ct. App. 2004)).  But as the Court already discussed, Thyssenkrupp's material breach is a factual issue that the Court cannot resolve at summary judgment.  Therefore, the Court denies Harlan's motion for summary judgment on this ground.

Second, Harlan states that Thyssenkrupp's damages in Count I for lost profits and damages for delays are not available under the subcontract.  Doc. 77 at 25–36.  Section 19(f) of the subcontract states that "[i]n no event, whether related to termination or for any other reason, shall Contractor be liable to Subcontractor for lost opportunity costs, lost profits, financing costs, impact costs, home office overhead, or other consequential, indirect, or special damages of any type."  Doc. 92-2 at 13.

The Court cannot determine at this time whether Thyssenkrupp is entitled to the damages in Count I, because Thyssenkrupp would only receive those damages if Harlan breached the subcontract.  Doc. 1 at 4–5; *see also Robson*, 2021 WL 1222429, at *8.  Genuine issues of material fact exist on whether Harlan breached the subcontract, particularly because the

factfinder must first determine whether Thyssenkrupp was already in default.  *See* Doc. 92-2 at 12–13.  The Court denies summary judgment to Harlan on this ground.

Third, Harlan states that it already paid Thyssenkrupp for its work, so Thyssenkrupp cannot recover any additional damages on Count I.  Doc. 77 at 35–36.  According to Harlan, the subcontract only required a final payment to Thyssenkrupp after the owner paid Harlan the retainage amount.  *Id.*  Harlan sent a "final" payment of $46,446.38 to Thyssenkrupp on March 23, 2021, after the owner paid Harlan for the project.  Doc. 103-2 at 11.  Harlan concludes that it is entitled to summary judgment, because Harlan paid Thyssenkrupp the full amount under the subcontract.  *Id.*

In response, Thyssenkrupp objects that the payment from Harlan was both untimely and insufficient to cover its damages in Count I.  Doc. 106 at 2–5.  Thyssenkrupp claims that Harlan did not comply with the subcontract by withholding payment from August 2018 to March 2021.  Doc. 92-2 at 67 ("[P]ayment from Owner to Contractor shall not be a condition precedent to payment from Contractor to Subcontractor.").  Thyssenkrupp further represents that Harlan's recent payment does not satisfy Thyssenkrupp's claimed damages for the lost profits and delays, nor did it include amounts for interest and attorneys' fees.  Doc. 106 at 5 (citing Mo. Rev. Stat. § 408.020 (prejudgment interest)).  The Court need not resolve this issue on the present motion, as multiple factual disputes already prevent the Court from determining whether Harlan breached the subcontract.

Fourth, Harlan seeks summary judgment on Count II of Thyssenkrupp's complaint because Harlan was not responsible under the subcontract for supervising TKE's sub-subcontractors.  Doc. 77 at 36–37.  Thyssenkrupp alleged in Count II that Harlan breached the subcontract by "failing to schedule, direct, and coordinate the work of TKE's sub-subcontractors

so that TKE had sufficient time to inspect the material to assure it complied with Harlan's drawing and specifications and install the elevators if there was a problem with the sub-subcontractor's supply of materials."  Doc. 1 at 5–7.

Harlan points out that under the subcontract, Thyssenkrupp was responsible for supervising its own sub-subcontractors and furnishing the correct materials.  Doc. 77 at 37. Section 8 of the subcontract provides that "Subcontractor shall furnish materials complying strictly with the Subcontract Documents," and Section 18 states that Thyssenkrupp is "fully responsible for all acts and omissions of Subcontractor's suppliers and sub-subcontractors." Doc. 92-2 at 8, 12.  Based on the express language in the subcontract, Harlan's failure to supervise Thyssenkrupp's sub-subcontractors is not a breach.  *See* Doc. 92-2 at 8, 12.  Therefore, Harlan is entitled to summary judgment on Count II of Thyssenkrupp's complaint.

Thyssenkrupp responds that it made a mistake in its complaint and that Harlan is attempting "to use a typo in TKE's Complaint as a basis to preclude this Court from addressing the issue on the merits."  Doc. 86 at 12.  Thyssenkrupp represents that it meant to refer to "Harlan's subcontractors" rather than "TKE's sub-subcontractors" in paragraphs 40 and 44 of its complaint.  *Id.*  Thyssenkrupp argues that construing the allegations in the complaint as-written amounts to a "miscarriage of justice."  *Id.*  In its response to Harlan's motion for summary judgment, Thyssenkrupp informally requests that the Court construe its complaint to say "Harlan's contractors" rather than "TKE's sub-subcontractors."  *Id.*

Thyssenkrupp cannot unilaterally amend its pleadings through its brief.  Thyssenkrupp filed its complaint back in December 2018.  Doc. 1; Doc. 32 at 4.  The Case Management Order specified that the parties must file motions for amendment of pleadings "no later than September 2, 2019."  Doc. 42 at 1.  Thyssenkrupp first raised the issue with Harlan of a "typo" in the

16

complaint on October 21, 2020, one month before the end of discovery.  Doc. 77 at 36.

Thyssenkrupp informed Harlan that it would seek leave to amend its complaint accordingly, but

it never filed a motion.  *See id.*  Rule 7(b)(1) requires parties to request court orders by a written

motion and "state with particularity the grounds for seeking the order" and "the relief sought."

Courts do not construe a request for leave to amend in a brief as a proper motion for leave to

amend.  *See Wolgin v. Simon*, 722 F.2d 389, 394 (8th Cir. 1983).  The Court therefore declines to

interpret Count II of Thyssenkrupp's complaint differently based on an untimely assertion that it

contains a "typo."  Doc. 86 at 12.

Accordingly, the Court denies Harlan's summary judgment motion on Count I of

Thyssenkrupp's complaint but grants summary judgment to Harlan on Count II.  Doc. 76.

### 5.    Count IV of Thyssenkrupp's complaint

Harlan moves for summary judgment in its favor on Count IV of Thyssenkrupp's

complaint, arguing that the existence of the subcontract precludes Thyssenkrupp's claim for

relief in quantum meruit.  Doc. 77 at 37–38.  "Under Missouri law, quantum meruit and unjust

enrichment are separate, but related, remedies in quasi-contract."  *32nd St. Surgery Ctr., LLC v.

Right Choice Managed Care*, 820 F.3d 950, 955 (8th Cir. 2016) (citing *Johnson Grp., Inc. v.

Grasso Bros.*, 939 S.W.2d 28, 30 (Mo. Ct. App. 1997); *Comp & Soft, Inc. v. AT & T Corp.*, 252

S.W.3d 189, 196 (Mo. Ct. App. 2008)).  Plaintiffs may not maintain an action for either of these

quasi-contract remedies "when an express contract governs the subject matter for which recovery

is sought."  *32nd St. Surgery Ctr*, 820 F.3d at 955–56 (citing *Lowe v. Hill*, 430 S.W.3d 346, 349

(Mo. Ct. App. 2014); *Burrus v. HBE Corp.*, 211 S.W.3d 613, 619 (Mo. Ct. App. 2006).  Where

an express contract governs, "the plaintiff's sole theory of recovery must lie on the contract."

*Burrus*, 211 S.W.3d at 619.  Here, Harlan and Thyssenkrupp agree that they entered into a valid subcontract, so the subcontract governs the relationship.  Doc. 87 at ¶ 1.

Thyssenkrupp argues that it may plead the two theories in the alternative and elect one theory later.  Doc. 86 at 13 (citing *Chase Elec. Co. v. Acme Battery Mfg. Co.*, 798 S.W.2d 204, 209 (Mo. Ct. App. 1990)).  But while Thyssenkrupp could plead in the alternative in its complaint, Thyssenkrupp's quantum meruit claim fails on the merits because Harlan established that the subcontract governs the parties' relationship.  *See 32nd Street Surgery Center*, 820 F.3d at 956.  Accordingly, the Court grants Harlan's motion for summary judgment on Count IV of Thyssenkrupp's complaint.  Doc. 76.

### B.    Thyssenkrupp's motion for summary judgment

Thyssenkrupp seeks summary judgment on Harlan's claim for breach of contract in Count I of its counterclaim.  Doc. 73.  Thyssenkrupp argues that:  (1) Harlan cannot tie any of its damages to Thyssenkrupp's alleged breach of the subcontract, (2) Harlan "contractually waived damages" for many categories of its alleged damages, and (3) Harlan did not establish that it incurred certain damages.  *Id.* at ¶ 5.

As previously discussed, the Court cannot address which damages are available to Harlan until a factfinder determines that Thyssenkrupp actually breached the contract.  *See Robson*, 2021 WL 1222429, at *8.  Because genuine issues of material fact exist as to whether Thyssenkrupp breached the subcontract, the Court denies Thyssenkrupp's motion for summary judgment.  Doc. 73.

### C.    Federal's motion for summary judgment

Federal moves for summary judgment on Counts II and III of Harlan's counterclaim. Doc. 78.  Federal claims that it is entitled to summary judgment because Harlan failed to satisfy

the condition precedent to Federal's performance obligations and because Harlan materially breached the bond by depriving Federal of its right perform the bonded contract.  *Id.*

Federal admits that its potential liability under the performance bond is "derivative of [Thyssenkrupp's] potential liability under the bonded contract."  *Id.* at 2.  Harlan could only make a claim under the bond if Thyssenkrupp breached the subcontract through a "contractor default."  Doc. 81-1.  Genuine issues of material fact exist as to whether Thyssenkrupp materially breached the subcontract, so the Court cannot resolve whether Federal had an obligation to perform on the bond.  The Court likewise denies Federal's Motion for Summary Judgment.  Doc. 78.

## V.      Conclusion

The Court finds that numerous factual issues remain regarding Thyssenkrupp and Harlan's alleged breaches of the subcontract.  Accordingly, the Court denies Thyssenkrupp's and Federal's motions for summary judgment, Docs.73and 78.  The Court grants in part and denies in part Harlan's motion for summary judgment, Doc. 76.  The Court denies Harlan's motion for summary judgment as to liability on Counts I and II of its counterclaim.  The Court denies Harlan's motion for summary judgment on Count III of its counterclaim and Count III of Thyssenkrupp's complaint.  The Court denies Harlan's motion for summary judgment on Count I of Thyssenkrupp's complaint but grants Harlan summary judgment on Count II of Thyssenkrupp's complaint.  The Court grants Harlan's motion for summary judgment on Count IV of Thyssenkrupp's complaint.

So Ordered this 17th day of June 2021.

_SL R. CR_
_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**